

08 CV 7497

JUDGE SAND

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

COMPLEX SYSTEMS, INC.,

                Plaintiff,

v.

ABN AMRO BANK N.V.

                Defendant.

------------------------------------X

Civil Action No.
ECF CASE

JURY DEMANDED

RECEIVED AUG 2 5 2008 U.S.D.C. S.D. N.Y. CASHIERS

## VERIFIED COMPLAINT

Plaintiff, by its attorneys, for its Complaint against defendant, alleges:

### JURISDICTION AND VENUE

1.     This action arises under the Copyright Laws of the United States, 17 U.S.C. Sec. 101 *et. seq.* and under the laws of the State of New York relating to breach of contract, trade secret misappropriation and breach of confidentiality.

2.     Jurisdiction of the subject matter of this action is conferred on this Court by 28 U.S.C. §§1338 and 1367.

3.     Venue is proper in this judicial district pursuant to Sections 1391 (c) and (d) and 1400(a).

## THE PARTIES

4. Plaintiff, Complex Systems, Inc. (hereinafter "plaintiff" or "CSI"), is a corporation organized and existing under the laws of the State of Delaware, with an office and principal, regular and established place of business at 1105 North Market Street, Wilmington, DE 19801.

5. Upon information and belief, defendant, ABN AMRO Bank N.V. (hereinafter "defendant" or "ABN") is a corporation of the Netherlands, having a principal, regular and established place of business at Gustav Mahlerlaan 10, 1082 PP, Amsterdam, The Netherlands. Upon information and belief, ABN maintains one or more offices in Manhattan, New York, or otherwise conducts business on a regular basis in this jurisdiction and venue.

6. Upon information and belief, defendant transacts business within this district, derives substantial revenue from intra-state and inter-state commerce and has committed tortuous acts within this district and also without this district having injurious consequences within this district, and defendant is otherwise within the jurisdiction of this Court.

## BACKGROUND FACTS

7. CSI is the owner of a certain copyrighted computer program entitled BankTrade ("BankTrade software").

8. The BankTrade software enables financial institutions to process and facilitate banking transactions for trade finance, such as letters of credit, guarantees, loans, funds transfer, collections and the like. The Banktrade software is used by many large international banks worldwide, and has enjoyed widespread commercial success.

9. In October, 1997, CSI granted a license to use the BankTrade software to ABN AMRO Information Technology Services Company, Inc. ("ABN IT"), who, at that time, was a

2

subsidiary of ABN AMRO North America Holding Company ("ABN Holding") which, itself, was a subsidiary of defendant ABN herein. From time-to-time the license was amended through addendums thereto. (The license and addendums thereto hereinafter collectively referred to as the "License").

10. The License granted to its licensee, the right to use a required and limited number of copies of the BankTrade software in machine readable form to service the territory allowed under the License, and also granted certain other limited rights.

11. The amendments broadened the rights that the Licensee received.

12. The License also expressly and specifically provided that the licensee was required to "designate and register" with CSI all central processing units ("CPUs") by type/serial number used by licensee that operated the BankTrade software.

13. The License also provided that the BankTrade software and all documentation and copies thereof were the property of CSI, including any revisions or modifications thereto, and further including any copyright rights in the BankTrade software.

14. The License further provided that any patent, copyright, trademark or trade secret right in the BankTrade software system ("System"), which System included the BankTrade software, was the property of CSI, again including any revisions or modifications thereto, and that the licensee was required to "take all reasonable precautions (the same being not less than those employed to protect Licensee's own proprietary information) to maintain the confidentiality of the System."

15. Violation of this confidentiality provision of the License allowed for immediate termination of the License.

16. New York law governed interpretation of the License and the parties thereto "irrevocably" consented to jurisdiction of any dispute in the state and/or federal courts of the State of

3

New York.

17. In addition, the License provided for certain limited rights of assignment by Licensee among certain related entities.

18. Upon information and belief, at times during the course of the License, ABN IT installed the BankTrade software in some CPUs located at various of its parent and/or affiliated companies. These installations are believed to have included object and source code installations into these parent/affiliated company CPUs (hereinafter collectively referred to as "the parent installations").

19. Upon information and belief, the parent installations were modified from time to time at the direction of ABN IT and/or its affiliates.

20. Upon information and belief, ABN Holding, including its subsidiary ABN IT, was purchased from its parent, ABN, by Bank of America Corporation ("BAC") in or around October 1, 2007 (hereinafter "the Purchase"). Subsequent to the Purchase, ABN IT was renamed BAC Services Company, Inc. ("BSC")

21. Upon information and belief, the License and all rights thereunder remained with BSC after the Purchase.

22. Despite the fact that the rights under the license were maintained by BSC, ABN and/or its other related entities are presently using the Banktrade software without a license.

23. Upon information and belief, to date ABN maintains and, in fact, actively modifies, duplicates, uses and advertises its possession of, the BankTrade software and all documentation, none of which is licensed, and also causes one or more affiliated entities to ABN to do so as well.

24. ABN's continued possession, duplication, modification and use the BankTrade software after the Purchase was, and continues to be, infringement by ABN of CSI's copyright rights

4

in the BankTrade software because ABN does not own a license to that software.

25. ABN's use of the Banktrade Software is without license, and constitutes a knowing willful violation of CSI's copyright rights.

26. On or about October 17, 2007, ABN was acquired by Royal Bank of Scotland. After such acquisition, ABN and RBS represented to CSI, numerous times, that subsequent to the Purchase on October 1, 2007, the License was owned by BSC, the original licensee, albeit with a different name. However, when CSI discovered that ABN was still using the Banktrade software, after the Purchase, and without a license, ABN then represented that the License was assigned by ABN IT to ABN prior to the Purchase. (See e.g.; Exhibits A and B hereto)

27. When asked to provide documentation that evidences the chain of title of the ABN IT license, ABN provided only nonsensical irrelevant documents that did not evidence the chain of title, and which did not indicate any assignment had ever taken place.

28. As a result of the actions of ABN and its affiliates, upon information and belief, the Banktrade software that was licensed to ABN IT is now being used openly by both ABN, and by BAC, an unrelated company, through its newly owned subsidiary BSC. As a result of this conduct, two companies are now using software for which only one is licensed.

29. Upon information and belief, and in the alternative, the License was transferred by assignment from ABN IT to its parent, ABN, in and around October 1, 2007; just prior to, or contemporaneously with, the Purchase.

30. Upon information and belief under this alternative theory, ABN stepped into the shoes of ABN IT, assuming all of ABN IT's liabilities, benefits and obligations under the License.

31. Upon information and belief under this alternative theory, from the date of the Purchase, ABN IT, renamed BSC, was no longer a subsidiary or affiliated entity of ABN.

32. Upon information and belief under this alternative theory, after the assignment of the License to ABN and the purchase of ABN Holding by BAC, ABN consented to, and in fact, affirmatively granted to, BSC the right to possess, control, duplicate, modify and use the System, including the BankTrade software, just as ABN IT had prior to the transfer of the License to ABN and the purchase of ABN Holding by BAC.

33. Upon information and belief under this alternative theory, ABN's grant to BSC to possess, control, duplicate, modify and use the System and BankTrade software was to allow BSC to be compensated for use of infringing software.

34. Upon information and belief under this alternative theory, ABN's grant to BSC to possess, control, duplicate, modify and use the System and BankTrade software was to process banking information for other banks and their customers at the request of ABN.

35. Upon information and belief under this alternative theory, at all times ABN has consented to, and affirmatively granted to, BSC rights to possess, control, duplicate, modify and use the System and BankTrade software, knowing that its grant of such rights was in violation of the License, CSI's copyright rights in the BankTrade software and ABN's covenant to maintain CSI's confidential and trade secret business information in the System in confidence.

36. Upon information and belief under this alternative theory, ABN also provided copies of the System for use by BSC, in violation of the License Agreement. ABN has also compensated BSC for its operation of the software that, under this alternative theory, ABN knows is infringing.

37. On March 31, 2008 and June 5 2008, CSI sent termination letters to BSC and ABN, respectively, terminating any license rights they may have had, as permitted by the License, based upon the confidentiality/trade secret violations.

38. ABN's authorization of, and compensation for, BSC to possess, duplicate, modify

6

and use the BankTrade software for ABN and others, as well as ABN's provision of copies of the BankTrade software to BSC after the Purchase, was, and continues to be, infringement by ABN of CSI's copyright rights in the BankTrade software.

39.     ABN's authorization of, and compensation for, BSC to possess, duplicate, modify and use the BankTrade software for ABN and others, as well as ABN's provision of copies of the BankTrade software to BSC after the Purchase, was, and continues to be, inducement of infringement by ABN of BSC to violate CSI's copyright rights.

40.     ABN's grant of rights to BSC to possess, duplicate, modify and use the System is a breach of the License and, in particular, at least paragraph 9 of the License, which called for CSI's proprietary and confidential information to be kept confidential.

41.     ABN's grant of rights to BSC to continue to possess, duplicate, modify and use the System is a violation of CSI's trade secret rights in the System.

## FIRST CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT
### FIRST THEORY

42.     CSI repeats and re-alleges paragraphs 1-41 hereof, as if fully set forth herein.

43.     The BankTrade software consists of material which is wholly original and is copyrightable subject matter under the Copyright Laws of the United States, 17 U.S.C. Sec. 101, et. seq.

44.     CSI has duly complied with the provisions of the Copyright Laws of the United States and has secured rights and privileges in and to the BankTrade software, and CSI has duly requested and received from the Register of Copyrights a Certificate of Registration pertaining to the BankTrade software, identified as TXu 1-579-553, for the work entitled BankTrade Version 8.0, having an effective date of August 6, 2008.

45. All copies of the BankTrade software and all licensed use of the BankTrade software, have been in conformity with the provisions of the Copyright Laws of the United States.

46. ABN has knowingly and willfully infringed CSI's copyright in the BankTrade software under the Copyright Laws of the United States, 17 U.S.C. Sec. 101 *et. seq.,* by duplicating, modifying, using and/or advertising the BankTrade software from the October, 2007 Purchase forward.

47. At all times pertinent hereto, ABN had full knowledge of the copyright rights of CSI in the BankTrade software.

48. In wanton disregard of CSI's copyright rights, ABN continued to possess, duplicate, modify, use and advertise the BankTrade software after ABN IT was purchased by BAC and took with it the License in the BankTrade software.

49. All of ABN's acts of infringement were, and continue to be, without the permission, license or consent of CSI from the October, 2007 Purchase forward.

50. ABN has been, and continues to be, unjustly enriched by its actions and CSI has been and continues to be damaged thereby and, as such, CSI is entitled to an accounting of its damages, including but not limited to an accounting of ABN's profits and/or a reasonable royalty, against ABN for ABN's knowingly willful and purposeful violation of CSI's rights in the BankTrade software.

51. ABN should be permanently enjoined from continuing to infringe the BankTrade software, including being ordered to return to CSI the System, all documentation and copies thereof, in ABN's possession or control.

52. Upon information and belief, CSI believes it has been, and will continue to be, damaged by ABN's continuing acts of infringement, and seeks an award of damages to be

determined at trial, said damages believed to be upwards of three hundred million dollars.

## SECOND CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT
### ALTERNATE THEORY

53. CSI repeats and re-alleges paragraphs 1- 52 hereof, as if fully set forth herein.

54. The BankTrade software consists of material which is wholly original and is copyrightable subject matter under the Copyright Laws of the United States, 17 U.S.C. Sec. 101, et. seq.

55. CSI has duly complied with the provisions of the Copyright Laws of the United States and has secured rights and privileges in and to the BankTrade software, and CSI has duly requested and received from the Register of Copyrights a Certificate of Registration pertaining to the BankTrade software, identified as TXu 1-579-553, for the work entitled BankTrade Version 8.0, having an effective date of August 6, 2008.

56. All copies of the BankTrade software and all licensed use of the BankTrade software, have been in conformity with the provisions of the Copyright Laws of the United States.

57. ABN has willfully infringed and/or contributorily infringed and/or induced infringement of CSI's copyright in the BankTrade software under the Copyright Laws of the United States, 17 U.S.C. Sec. 101 *et. seq.,* by duplicating, modifying, using and/or advertising, and/or by granting rights to, or otherwise authorizing, BSC to duplicate, modify, use and/or advertise use of the BankTrade software from the October, 2007 Purchase forward.

58. Based at least upon the existence of the License, ABN had full knowledge of the copyright rights of CSI in the BankTrade software prior to its continued duplication(s), modification(s), use and advertising of, and/or authorizing such duplication(s), modification(s), use and advertising to BSC in the BankTrade software after the October, 2007 Purchase.

59. All of ABN's acts of infringement were, and continue to be, without the permission,

license or consent of CSI from the October, 2007 Purchase forward.

60. ABN has been, and continues to be, unjustly enriched by its actions and CSI has been and continues to be damaged thereby and, as such, CSI is entitled to an accounting of its damages, including but not limited to an accounting of ABN's profits and/or a reasonable royalty, against ABN for ABN's knowingly willful and purposeful violation of CSI's rights in the BankTrade software.

61. ABN should be permanently enjoined from continuing to infringe, directly and/or contributorily and/or through inducement, the BankTrade software, including being ordered to return the System, all documentation and copies thereof, in the possession or control of either BSC to CSI.

62. Upon information and belief, CSI believes it has been, and will continue to be, damaged by ABN's continuing acts of infringement, whether direct, contributory or by inducement, in an amount to be determined at trial, but believed to be upwards of three hundred million dollars.

## THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT

63. CSI repeats and re-alleges paragraphs 1-62 hereof, as if fully set forth herein.

64. Upon information and belief, since the October, 2007 Purchase, ABN has breached the express restricts of the License as to who may access, possess, modify, duplicate, use and/or advertise the System by ABN's actions in affirmatively granting, or impliedly granting, to BSC and/or BAC the right to continue to possess, modify, duplicate, use and/or advertise the System, including all documentation and copies thereof, and/or by not demanding return from BSC of the System, including all documentation and copies thereof.

65. All of ABN's acts in breaching the License were, and continue to be, without the permission, license or consent of CSI from the October, 2007 Purchase forward.

66. ABN has been, and continues to be, unjustly enriched by its actions and CSI has been and continues to be damaged thereby and, as such, CSI is entitled to an accounting of its damages against ABN for ABN's knowingly willful and purposeful violation of CSI's rights in the License.

67. ABN should be permanently enjoined from continuing to breach the License, including being ordered to return the System, all documentation and copies thereof, in the possession or control of either BSC or ABN.

68. Upon information and belief, CSI believes it has been, and will continue to be, damaged by ABN's continuing breach of the License in an amount to be determined at trial, but believed to be upwards of three hundred million dollars.

## FORTH CAUSE OF ACTION FOR TRADE SECRET VIOLATIONS

69. CSI repeats and re-alleges paragraphs 1-64 hereof, as if fully set forth herein.

70. Upon information and belief, since the October, 2007 Purchase, ABN has breached the confidentiality provisions set forth in paragraph 9 of the License by breaching its promise to maintain CSI's confidential business information in confidence.

71. In particular, ABN has breached the confidentiality provisions set forth in paragraph 9 of the License by affirmatively granting, or impliedly granting, to ABN IT and/or BAC the right to continue to possess, modify, duplicate, use and/or advertise the proprietary and confidential System, including all documentation and copies thereof, and/or by not demanding return from ABN IT and/or BAC of the proprietary and confidential System, including all documentation and copies thereof.

72. All of ABN's acts in breaching the License's confidentiality provisions were, and continue to be, without the permission, license or consent of CSI from the October, 2007 Purchase

11

forward.

73. ABN has been, and continues to be, unjustly enriched by its actions and CSI has been, and continues to be, damaged thereby and as such CSI is entitled to an accounting of its damages against ABN for ABN's knowingly willful and purposeful violation of CSI's confidential rights covenanted to be protected by ABN in the License.

74. ABN should be permanently enjoined from continuing to breach CSI's confidential rights under the License, including being ordered to return the System, all documentation and copies thereof, in the possession or control of either ABN, BSC or BAC to CSI.

75. Upon information and belief, CSI believes it has been, and will continue to be, damaged by ABN's continuing breach of the License in an amount to be determined at trial, but believed to be upwards of three hundred million dollars.

## JURY DEMAND

76. CSI hereby demands trial by jury.

**WHEREFORE**, CSI demands:

A. That ABN, its employees, agents, servants, related companies and all parties in privity with it, or any of them (hereinafter "ABN's related companies"), be permanently enjoined from infringing, contributorily infringing and/or inducing the infringement of, CSI's copyright rights asserted herein in any manner including, but not limited to, those manners expressly asserted hereinabove.

B. That ABN and ABN's related companies be required to deliver up for destruction all materials and documentation bearing CSI's copyrighted work in the BankTrade software and, pursuant to CSI's alternate pleadings, all materials and documentation bearing any trade secret of

CSI, whether in their possession or control, or in the possession or control of BSC.

    C.    That ABN be required to pay CSI such damages as CSI sustained in consequence of ABN's copyright infringement, breach of contract and trade secret misappropriation and to account for all gains, profits and advantages derived by ABN therefrom.

    D.    That ABN pay to CSI, CSI's costs of this Action, and CSI's attorneys' fees, as the Court may allow.

    E.    That CSI be granted such other and further relief as the Court may deem just.

KAPLAN GILMAN GIBSON & DERNIER LLP
*Attorneys for Plaintiff Complex Systems, Inc.*
900 Route 9 North, Suite 504
Woodbridge, New Jersey 07095
Telephone (732) 634-7634

Dated: August 22, 2008

By: _____
Jeffrey I. Kaplan (JK 4706)
Michael Gilman (MG 6800)

## VERIFICATION

I, Gad Janay, principal of plaintiff Complex Systems, Inc., have read the above Complaint and certify herein that to the best of my knowledge and belief, all statements made herein are true, or if made upon information and belief, are believed to be true.

Dated: August ___, 2008

_____
Gad Janay

# EXHIBIT A

**Sheldon I. Goldfarb**
General Counsel


The Royal Bank of Scotland Group

**RBS America**
One Greenwich Plaza
Greenwich, CT 06830

Telephone: 203 625 6065
Facsimile:   203 422 4065

Email: SGoldfarb@rbs.com
Website: www.rbs.com

March 3, 2008

Mr. Gad Janay
Chairman and CEO
Complex Systems, Inc.
33 Maiden Lane, 9th Floor
New York, New York 10038

Via Overnight Carrier

Re: Letter dated February 27, 2008

Dear Mr. Janay,

I am responding on behalf of Sir Fred Goodwin to your letter of February 27, 2008 to him regarding the use by The Royal Bank of Scotland Group, plc ("RBS") through ABN AMRO Bank, N.V. ("ABN NV") of Complex Systems, Inc.'s ("CSI") BankTrade Software.

We understand that Bank of America ("BAC") has communicated to you that ABN Amro Information Technology Services Company, Inc. ("Services Company") was acquired by BAC as of October 1, 2007, and that BAC, therefore, is the successor in interest to the Services Company.

The underlying terms and conditions that govern use of CSI's BankTrade software in this case is the License Agreement, as amended ("License Agreement") by and between Services Company and CSI and signed by CSI on November 1, 1997. ABN NV is not a party to the License Agreement.

Therefore, we understand that BAC has requested that you direct any and all questions or other communications concerning the use of CSI's software under the License Agreement to it. We also understand that BAC has communicated to you its view that the License Agreement allows BAC, through Services Company, to provide processing services to ABN NV.

We trust that this satisfies your inquiry. In the future, should you have any reason to contact RBS regarding this matter, please address any such communication to my attention.

Sincerely,

cc: Sir Fred Goodwin
    Mark Fisher

# EXHIBIT B



The Royal Bank of Scotland Group plc
Group Purchasing, Americas
100 Sockanosset Cross Roads
MailStop: RDC120
Cranston, RI 02920

<u>VIA DHL Overnight Signature Required</u>

Mr. Gad Janay
Chairman and CEO
Complex Systems, Inc.
33 Malden Lane, 9th Floor
New York, NY 10038

June 26, 2008

Dear Mr. Janay,

I write in response to your letter dated June 5, 2008, regarding the BankTrade software license agreement ("License Agreement") between Complex Systems, Inc. ("Complex") and ABN AMRO Information Technology Services Company, Inc. ("IT"). The letter purports to terminate the License Agreement because of an alleged breach by IT of its confidentiality obligations. Your letter also expresses concern that Complex did not receive notice of the assignment of the License Agreement from IT to ABN AMRO N.V. ("NV").

First, as explained during our meeting last month, and as confirmed by the documents provided, the License Agreement was properly assigned from IT to NV. As you know, Section 20 of the License Agreement expressly permits an assignment from IT to NV without notice to Complex. Moreover, nothing in the License Agreement suggests that it can be terminated on the basis of a purported failure to provide notice of an assignment.

Second, as also explained during our meeting last month, there has been no breach of any confidentiality obligations under Section 9 of the License Agreement. Your assertion to the contrary, which you raised for the first time at our meeting in May, is unsubstantiated and unfounded. NV has and will continue to satisfy its confidentiality obligations. In short, Complex's purported termination of the License Agreement is void because NV has not breached Section 9 of the License Agreement.

As you know, over the past decade, NV has paid Complex millions of dollars for its license to use the BankTrade software during which time NV has operated in compliance with the License Agreement. It will continue to do so.

We trust this letter allays any concerns you may have, and we would be happy to meet again should you wish to discuss these matters further.

Best regards,

*Michael Lofgren*

Mr. Michael Lofgren
Chief Procurement Officer

cc:   Hollie Lussier
      David Meisels

The Royal Bank of Scotland Group plc
Registered in Scotland No 45551
Registered Office: 36 St Andrew Square, Edinburgh EH2 2YB

Agency agreements exist between members of
The Royal Bank of Scotland Group